**In re Russell Lee KING and Pamela Sue King, Debtors.**

No. 03–23368.

United States Bankruptcy Court, D. Kansas.

April 13, 2004.

Maurice B. Soltz, Kansas City, MO, for Russell Lee King and Pamela Sue King.

## MEMORANDUM OPINION[1]

ROBERT D. BERGER, Bankruptcy Judge.

This matter comes before the Court on the United States Trustee's ("UST") motion to dismiss this bankruptcy petition as a substantial abuse of Chapter 7 of the United States Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes the Court's Findings of Fact and Conclusions of Law as required by Rule 52 of the Federal Rules of Civil Procedure and made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies the UST's Motion to Dismiss.

### Factual Background

Mr. and Mrs. King (the "Debtors") filed their joint Chapter 7 petition for relief on August 13, 2003. Their schedules reflect secured debt of $262,230.11 and general unsecured consumer debt of $87,582.64. At the time they filed their schedules, the Debtors listed gross monthly income of $9,054.95 and net monthly income of $5,659.06. In their deductions from gross income, the Debtors scheduled monthly deductions of $389.22 and $487.80 for a 401(k) plan contribution and a 401(k) plan loan repayment, respectively. The Debtors listed total monthly expenses of $5,632.08, leaving them with monthly net disposable income of $26.98. The Debtors included in their monthly expenses $400.00 to cover a car payment and incidental living expenses for their 21–year–old daughter, who is attending college away from home, $86.28 for payment on a student loan, and $35.00 for payment on an overdraft bank account.

The UST filed a motion to dismiss pursuant to 11 U.S.C. § 707(b),[2] and on January 7, 2004, the Court held a pretrial hearing at which the parties agreed to waive an

---

1. The Debtors appeared by counsel Maurice B. Soltz of Kansas City, Missouri; the United States Trustee appeared by counsel Richard A. Wieland and William F. Schantz of Wichita, Kansas.

2. Subsequent statutory references are to the Bankruptcy Code ("the Code"), 11 U.S.C. § 101, et seq., unless otherwise noted.

528

evidentiary hearing, stipulated to the submission of exhibits for the Court's consideration, and agreed to proceed on oral arguments concerning the UST's motion. The exhibits submitted for the Court's consideration demonstrate that the Debtors understated their net income by $174.89 per month, that Mr. King received $14,671.00 in bonuses from January 1, 2003, through August 28, 2003, and that the Debtors' residence needs approximately $28,000.00 of work to prevent further damage to its foundation. The record further reflects that the Debtors live alone and that Mrs. King experienced an unanticipated period of unemployment from approximately December of 2002 through March of 2003.

The UST contends that Mr. King's $14,-000.00+ annual bonus, the $174.89 understatement of monthly net income, the respective $389.22 and $487.80–401(k) plan contribution and loan repayment, the $400.00 for the Debtors' daughter's car payment and incidental expenses, the $86.28 student loan payment, and the $35.00 overdraft account expense should be considered in a hypothetical Chapter 13 disposable income analysis. The UST further contends that if the above-referenced amounts are included in the Debtors' disposable income, the Debtors are capable of paying a substantial amount to unsecured creditors through a Chapter 13 plan, and that their Chapter 7 petition should consequently be dismissed. In addition, the UST asserts the Debtors' understatement of $174.89 of net monthly income illustrates a lack of good faith in the filing of their bankruptcy petition.

*Discussion*

 Under section 707(b), upon a motion by the United States Trustee, the bankruptcy court may dismiss an individual debtor's Chapter 7 proceeding where the debts sought to be discharged are "primarily consumer debts" if discharging those debts "would be a substantial abuse of the provisions" of Chapter 7. In the Tenth Circuit, whether "substantial abuse" exists is determined by examining the "totality of the circumstances" surrounding a debtor's petition.[3] In examining the "totality of the circumstances," a debtor's ability to repay the debt is a primary factor to consider when determining whether dismissal is warranted pursuant to section 707(b).[4] However, this Court will also consider other relevant or contributing factors and make its final decision on a "case-by-case" basis.[5] Underlying this Court's consideration of any section 707(b) motion to dismiss is the statutory presumption to grant the relief requested by a debtor, that is, a Chapter 7 discharge of debts.[6]

The parties do not dispute that the debts listed in the Debtors' schedules are primarily consumer in nature. Therefore, the Court will proceed to a direct inquiry of whether discharging the Debtors' obligations would constitute a substantial abuse of Chapter 7 provisions. Although the Court holds in this case that substantial abuse does not exist within the "totality of the circumstances," as discussed *infra*, the Court will first examine the factors surrounding the Debtors' bankruptcy filing with particularity and then within the totality of the circumstances.

**3.** *In re Stewart,* 175 F.3d 796, 809 (10th Cir. 1999).

**4.** *Id.*

**5.** *Id.*

**6.** 11 U.S.C. § 707(b).

## I. *Disposable Income*

 As a primary factor in a "substantial abuse" analysis, courts often look to the "disposable income" that would be available to pay creditors under a hypothetical Chapter 13 plan [7] to determine whether an ability to repay exists.[8] Disposable income, as defined by the Code, is income "which is not reasonably necessary to be expended for the maintenance or support of the debtor." [9] Therefore, looking to apply a hypothetical Chapter 13 disposable income analysis for guidance on the Debtors' ability to pay, the Court examines two issues: (1) the amount of the Debtors' income and (2) the expenses that are "reasonably necessary."

### (A) The Debtors' Income (Schedule I)

The Debtors listed $5,659.06 of total monthly net income on Schedule I. The UST contends that at least $14,000.00 in annual bonuses, $877.02 in monthly deductions for 401(k) plan contributions and loan repayments, and $174.89 in net monthly income omitted from the Debtors' Schedule I should also be included in the Debtors' net monthly income. This Court considers the $174.89 omitted from the Debtors' Schedule I as disposable income in its hypothetical Chapter 13 disposable

income analysis because the Debtors did not produce evidence to rebut the UST's contention. Therefore, as a threshold concern, this Court first addresses whether the bonuses, 401(k) plan contributions, and 401(k) loan repayments should be considered disposable income in a hypothetical Chapter 13 disposable income analysis.

### (1) Bonuses

 This Court is hesitant to impute future earnings to a debtor based upon past bonuses. Bonuses are typically awarded on factors largely outside the control of individual debtors and are in no way a persistent indicator of future income. Absent evidence establishing the future reliability or guarantee of otherwise speculative income, the Court will not tie a debtor's potential Chapter 13 success on factors so decidedly out of his or her control.[10] In the present case, the UST presented evidence that Mr. King received approximately $14,671.00 in annual bonus during 2003. However, the UST presented no evidence Mr. King will receive guaranteed or non-speculative bonus income in the future. Therefore, this Court does not consider his potential bonus income for the purposes of a hypothetical Chapter 13 disposable income analysis.

---

**7.** Confirmation of a plan under Chapter 13 of the Bankruptcy Code is governed by 11 U.S.C. § 1325(b), which provides, in relevant part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the three-year period beginning

on the date that the first payment is due under the plan will be applied to make payments under the plan. (emphasis added).

**8.** *See In re Cohen,* 246 B.R. 658, 659 (Bankr. D.Col.2000) (citing *In re Heffernan,* 242 B.R. 812, 816 (Bankr.D.Conn.1999)).

**9.** 11 U.S.C. § 1325(b)(2).

**10.** *See Commercial Credit Corp. v. Killough (In re Killough),* 900 F.2d 61, 65 (5th Cir.1990) (stating that the potential for overtime was too speculative to be characterized as projected income).

### (2) Voluntary Retirement Plan Contributions

Authority is split on whether voluntary retirement plan contributions represent disposable income. One school of thought, led by the Third Circuit, appears to adopt a *per se* rule that voluntary retirement plan contributions are never reasonably necessary expenses in a Chapter 13 proceeding.[11] Another school of thought, led by the Second Circuit, appears to allow the confirmation of Chapter 13 plans where debtors continue voluntary contributions to retirement plans or has adopted "case-by-case" analysis granting deference to bankruptcy judges to determine from the facts of each individual case whether pension contributions qualify as reasonably necessary expenses.[12]

Presently, neither the Tenth Circuit Court of Appeals nor the Tenth Circuit Bankruptcy Appellate Panel has considered either school of thought. However, at least three bankruptcy courts within the Tenth Circuit recently published opinions concerning voluntary retirement plan contributions. In *In re Bayless*,[13] the Bankruptcy Court for the Western District of Oklahoma embraced a *per se* rule that voluntary retirement plan contributions shall be considered disposable income for the purposes of a Chapter 13 disposable income analysis. Conversely, one opinion out of the Bankruptcy Court for the District of Colorado, *In re Osborne*,[14] rejected a *per se* rule and adopted a "case-by-case" analysis, while another, in *In re Cohen*,[15] appears to have utilized an equitable analysis to determine whether voluntary retirement plan contributions should be included in disposable income.

▮▮▮ This Court, like the court in *Osborne*, rejects a *per se* rule that treats all voluntary contributions to retirement plans as disposable income. Additionally, this Court believes the Second Circuit's

---

11. *See, e.g., In re Anes*, 195 F.3d 177 (3rd Cir.1999); *In re Austin*, 299 B.R. 482 (Bankr. E.D.Tenn.2003) (citing *In re Cox*, 249 B.R. 29, 32 (Bankr.N.D.Fla.2000)); *see also In re Prout*, 273 B.R. 673 (Bankr.M.D.Fla.2002); *In re Regan*, 269 B.R. 693, 697 (Bankr.W.D.Mo. 2001); *In re Hansen*, 244 B.R. 799 (Bankr. N.D.Ill.2000); *In re Cohen*, 246 B.R. 658 (Bankr.D.Colo.2000); *In re Merrill*, 255 B.R. 320 (Bankr.D.Or.2000); *In re Moore*, 188 B.R. 671 (Bankr.D.Idaho 1995); *In re Cavanaugh*, 175 B.R. 369 (Bankr.D.Idaho 1994).

12. *See, e.g., The New York City Employees' Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124 (2nd Cir.2001); *In re Osborne*, No. 02–24999, 2003 WL 1960375 (Bankr.D.Colo.2003); *see also In re Guild*, 269 B.R. 470, 474 (Bankr.D.Mass. 2001) ("There is an inherent unfairness in adopting a per se rule...."); *In re Awuku*, 248 B.R. 21, 32 (Bankr.E.D.N.Y.2000) ("There is absolutely no support in the legislative history to either chapter 13 as a whole or to section 1325 to warrant a per se rule....").

13. 264 B.R. 719, 721 (Bankr.W.D.Okla.1999) ("[C]ontributions to a voluntary retirement program ... are part of Debtors' disposable income.").

14. No. 02–24999, 2003 WL 1960375, at *4 (Bankr.D.Colo. Apr.8, 2003).

15. 246 B.R. 658, 666 (Bankr.D.Colo.2000) ("It is [] anomalous and inequitable to allow [the Debtor] to commit part of her earnings to the payment of her own retirement fund—in which the Debtor, as of the date of the Debtor's filing, has accumulated the sum of approximately $70,000.00—and pay her unsecured creditors nothing."). It should be noted that it is not clear whether the court in *Cohen* ultimately intended to forgo establishing a *per se* rule including all voluntary retirement plan contributions in a disposable income analysis. This Court believes, however, like the court in *Osborne*, that a case-by-case analysis does not conflict with the Court's opinion in *Cohen*. *See* n. 13. ("This Court's reading of Cohen is consistent with a case-by-case analysis of whether such contributions should be part of a debtor's disposable income.").

decision in *In re Taylor*[16] best comports with the Tenth Circuit's case-by-case analysis on section 707(b) motions to dismiss and, absent further guidance by the Tenth Circuit, hereby adopts the Second Circuit's rationale, as set forth below. In *Taylor*, the Second Circuit considered whether voluntary pension contributions were reasonably necessary expenses and held that it was within "the discretion of the bankruptcy court judge to make a decision, based on the facts of each individual case, whether or not [voluntary] pension contributions qualify as a reasonably necessary expense for that debtor."[17] The Second Circuit directed bankruptcy judges to weigh any factors properly before the court and set forth a non-exclusive list of factors to aid bankruptcy judges in their determinations.[18]

This Court will also determine whether voluntary retirement plan contributions in question qualify as a reasonably necessary expense for a debtor based on the facts of each individual case. It will weigh the following factors in making its determination:

(1) the age of the debtor and the amount of time until expected retirement;

(2) the likelihood that stopping payments will jeopardize the debtor's fresh start;

(3) the number and nature of the debtor's dependants;

(4) evidence that the debtor will suffer adverse employment conditions if the contributions are ceased;

(5) the debtor's yearly income;

(6) the debtor's overall budget; and

(7) any other constraints on the debtor that make it likely that the retirement contributions are reasonably necessary expenses for that debtor.

Affording no one factor greater weight than any other, this Court will ultimately make its determination on the overall reasonableness of a voluntary retirement plan contribution.

The decreased availability of defined benefit plans over the last thirty years underscores the necessity of self-funded retirement planning. Historically, defined benefit plans (such as pension funds) were funded by the employer, and hence there were no actual deductions from an employee's pay. However, as the availability of defined benefit plans has eroded, Congress has fostered the growth of self-funded retirement plans with special tax advantages and protections. To deny a debtor's ability to contribute reasonable funds to a plan for retirement contradicts the public policy reflected in the Congressional encouragement of self-sustained retirement and, further, improperly penalizes debtors who must either self-fund their own retirement or place their future in the hands of the social welfare system. In some instances,

---

**16.** 243 F.3d 124.

**17.** *Id.* at 129.

**18.** *Id.* at 129–30. The Second Circuit held that the bankruptcy judge may consider any factors properly before the court including but not limited to the following: (1) the age of the debtor and the amount of time until expected retirement; (2) the amount of the monthly contributions and the total amount of pension contributions debtor will have to buy back if the payments are discontinued; (3) the likelihood that buy-back payments will jeopardize the debtor's fresh start; (4) the number and nature of the debtor's dependants; (5) evidence that the debtor will suffer adverse employment conditions if the contributions are ceased; (6) the debtor's yearly income; (7) the debtor's overall budget; (8) who moved for an order to discontinue payments; and (9) any other constraints on the debtor that make it likely that the pension contributions are reasonably necessary expenses for that debtor.

such as a 401(k) plan, an employer may match some or all of an employee's contribution. If a debtor ceases employer-matched contributions, even for the three-to-five year Chapter 13 repayment period, he loses the benefit of the matching as well.

 In the present case, the UST contends that the Debtors' $389.22 monthly 401(k) plan contribution should be considered an unreasonable or unnecessary expense and included as disposable income for the purpose of a hypothetical Chapter 13 disposable income analysis. However, the Court notes that Mr. King is forty-seven years old, the approximate balance in his 401(k) plan is $75,000.00, and the $389.22 monthly 401(k) plan contribution is approximately 4.2% of the Debtors' gross monthly income. In addition, the Debtors' have at least one college-aged child and their expenses, as discussed *infra*, do not reflect an extravagant life style. Under these circumstances, the Debtors' monthly contribution is not an excessive percentage of their gross monthly income; it appears both a necessary and reasonable contribution to a voluntary retirement plan. The analysis might differ if the Debtors already had sufficient ability to adequately fund their retirement without additional contributions to their voluntary retirement plan throughout their Chapter 13 pendency. However, no such claim was made or supported by the UST. Therefore, the Court finds that the Debtors' monthly $389.22 contribution to their voluntary retirement plan is both necessary and reasonable and is not considered as disposable

income for the purposes of a hypothetical Chapter 13 disposable income analysis.

### (3) 401(k) Loan Repayment

 This Court also believes that whether retirement plan loan repayments constitute reasonably necessary expenses should be determined on a case-by-case basis. To the extent applicable, the Court adopts the factors as set forth above for weighing the reasonableness of voluntary retirement plan contributions. In addition, the Court believes substantial consideration should be given to the preservation of assets typically exempt from creditors and necessary for a debtor's care and support upon retirement. There is little reason for a "fresh start" that will only be answered with a substantial incapacity to provide for oneself at retirement. However, as a general supposition, the Court notes that repaying a loan to oneself while discharging loans owed to others seems both inequitable and unreasonable.[19] To that end, upon a motion to dismiss by the UST on grounds of reasonableness or necessity, the debtor must provide evidence of the reasonableness and necessity of repaying a retirement plan loan.[20] A debtor's generalized assertions of reasonableness and necessity will not satisfy this Court's concern.

 In the present case, the Debtors demonstrated the reasonableness and necessity of their $487.80 monthly loan repayment. Minimally, the Court notes that the Debtors' failure to repay their retirement plan loan will result in a priority tax

---

19. *See In re Harshbarger*, 66 F.3d 775, 778 (6th Cir.1995) ("[I]t would be unfair to the creditors to allow [debtors] to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.") (citing *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D.Ohio 1991)).

20. *In re Bell*, 264 B.R. 512, 516–17 (Bankr. S.D.Ill.2001) ("[T]he debtor [ ] should be afforded an opportunity to present evidence bearing on whether his repayment of his 401(k) loan is 'reasonably necessary.' ").

claim, which would reduce any potential distribution to general unsecured creditors through a Chapter 13 plan distribution.[21] In addition, the Debtors provided uncontroverted evidence of approximately $28,000.00 of foundation work needed on their residence in the near future. Because their schedules reflect little equity in their home, the Court believes the Debtors will likely encounter substantial difficulties locating a lender willing to fund the necessary repairs absent an adequate equity cushion. As a result, the Court concludes it is both necessary and reasonable for the Debtors to repay their retirement plan loan, as they will likely need to borrow against their retirement plan again for the necessary repair of their residence. Therefore, the $487.80 monthly loan repayment amount is not considered disposable income for a hypothetical Chapter 13 disposable income analysis.

**(B) The Debtors' Expenditures (Schedule J)**

The Debtors' Schedule J reflects $5,632.08 in total monthly expenses. Of this amount, the UST contends that the Debtors' $35.00 monthly for an overdraft bank account and $400.00 monthly for the Debtors' college-aged daughter's incidental expenses and car payment are both unnecessary or unreasonable. The UST further contends the Debtors' $86.28 monthly student loan payment should be included in a hypothetical Chapter 13 disposable income analysis.

**(1) Bank Account**

■ The UST contends that the Debtors' monthly overdraft bank account expense of $35.00 is unnecessary and unreasonable. However, without considering a Chapter 13 Trustee's administration fees, $35.00 monthly would yield only $1,260.00, or less than 1.5% of the Debtors' unsecured debt, for distribution to the Debtors' unsecured creditors over a three-year plan. Therefore, the Court finds that $35.00 monthly is not material to and will not be considered for a hypothetical Chapter 13 disposable income analysis under the facts of this case.

**(2) Expenses for Child Attending College**

■ Reasonable expenses incurred by a debtor to educate his or her children are "justified on the need to equip those children with the fundamental skills that are 'reasonably necessary' for future employment or, if it not completely passe, for leading an 'examined life' or at least playing an active role as an informed citizen in a free and democratic society."[22] Exceptions apply if monthly support is excessive or a child's age or income places him or her outside the realm of a traditional stu-

---

**21.** The Court doubts that the tax liability associated with defaulting on a retirement plan loan alone renders repayment of the loan as necessary and reasonable. However, taken in the context of a section 707(b) motion to dismiss, a priority tax claim resulting from the default of a retirement plan loan is one of many factors the Court will consider to determine the amount of unsecured debt that could be paid through a hypothetical Chapter 13 plan.

**22.** *In re Awuku*, 248 B.R. 21, 29–30 (Bankr. E.D.N.Y.2000); *accord In re Scobee*, 269 B.R.

678, 682 (Bankr.W.D.Mo.2001) ("[The court] will not find that [the Debtor] should not assist her [23–year–old] daughter with her education, despite the fact that [the Debtor] has no legal obligation to do so."); *In re Gonzales*, 157 B.R. 604, 610 (Bankr. E.D.Mich.1993) ("[D]ebtors may continue to assist (i.e., support) a child, who notwithstanding having attained majority, has not yet 'left the nest' without forfeiting the opportunity to repay their creditors through chapter 13.").

dent. In the present case, the Debtors' interest to ensure their 21–year–old daughter enjoys reliable transportation and can afford incidental expenses while attending college away from home is justifiable, and the Court's record otherwise has no indication that the Debtors' daughter is capable of reasonably supporting herself while attending college. The Court therefore finds that the Debtors' $400.00 monthly expenditure covering their daughter's car payment and incidental expenses while she attends college is both reasonable and necessary under the circumstances of this case, and the amount will not be considered for the purposes of a hypothetical Chapter 13 disposable income analysis.

### (3) Student Loans

The Court recognizes the potential impact a qualified special class that designates student loans for full payment has on distributions to general unsecured creditors under a Chapter 13 plan. Under section 1322(b)(1), a debtor's plan may "designate a class or classes of unsecured claims, as provided in section 1122 of [Title 11], but may not discriminate unfairly against any class so designated." Section 1122 requires a claim or interest be placed in a particular class only if the claim or interest is substantially similar to other claims or interests of that class, but permits dissimilar claims to be classified together for administrative convenience.[23] Congress, within the Bankruptcy Code,

has manifested its intent to distinguish student loans insured or guaranteed by a governmental institution from other unsecured creditors by excepting such student loans from discharge.[24] Therefore, as student loans are not usually discharged as general unsecured claims (absent a finding of undue hardship), bankruptcy courts are left to decide whether remaining general unsecured claims are unfairly discriminated against by treating student loans as a separate or special class.

Discrimination, within the context of section 1322(b)(1), is said to be unfair "when there is no valid reason to prefer one group of unsecured claims over another."[25] Although a number of tests have been adopted by the courts to determine whether a proposed classification scheme is proper,[26] it is not necessary for the Court to consider such tests as no actual plan has been proffered for consideration. It is enough, for the limited purposes of this matter, that the Court recognizes and weighs the potential impact student loans treated as a special class in a Chapter 13 will have on payments to general unsecured claims within the context of the totality of the circumstances. In this case, a special class in a hypothetical Chapter 13 plan that designates student loans for distribution prior to other general unsecured creditors renders this expense irrelevant to a section 707(b) analysis. It is more likely that a special class designating student loans for full

---

**23.** *See* 11 U.S.C. § 1122(a) and (b).

**24.** *See* 11 U.S.C. §§ 523(a)(8) and 1328(a).

**25.** *In re Williams,* 253 B.R. 220, 224 (Bankr. W.D.Tenn.2000) (citations omitted).

**26.** *See, e.g., In re Ponce,* 218 B.R. 571, 572 (Bankr.E.D.Wash.1998) (referencing the "Wolff test"); *In re Thibodeau,* 248 B.R. 699, 704 (Bankr.D.Mass.2000) (referencing the "Leser test"); *Groves v. LaBarge,* 160 B.R.

121, 124 (E.D.Mo.1993) (referencing the "Storberg test"); *see also In re McNichols,* 249 B.R. 160 (Bankr.N.D.Ill.2000) (citing *McCullough v. Brown,* 162 B.R. 506, 517–18 (N.D.Ill.1993) ("If a plan affording [ ] preferential treatment is to survive scrutiny under the statutory 'discriminate unfairly' test, the debtor must place something material onto the scales to show a correlative benefit to the other unsecured creditors....")).

payment through a Chapter 13 plan will reduce or eliminate any distribution general unsecured creditors receive under a Chapter 13 plan. Therefore, the UST's contention that the $86.28 monthly student loan payments should be considered disposable income has minimal, if any, impact on the disposition of this matter and will not be considered for the purposes of a hypothetical Chapter 13 disposable income analysis.

### (C) The Debtors' Ability to Pay in a Hypothetical Chapter 13

The uncertain bonus and reasonable and necessary monthly 401(k) plan contributions and loan repayments are not included as income on the Debtors' Schedule I. Since $174.89 of additional net income was omitted from the Debtors' Schedule I, the Debtors' net income is properly reflected as $5,833.95 for the purpose of a hypothetical Chapter 13 analysis. In addition, the Debtors' Schedule J remains substantively unchanged for the purposes of a hypothetical Chapter 13 disposable income analysis. The Debtors' monthly $400.00 contribution to their daughter is both reasonable and necessary, while addition of the Debtors' monthly $86.28 student loan payments and $35.00 monthly bank account expenses to the amount of disposable income available would not materially increase any distribution available to general unsecured creditors through a Chapter 13 plan. Therefore, the Court concludes that the Debtors' expenses as outlined on their Schedule J at $5,632.08 remain unchanged for the purposes of this hypothetical Chapter 13 disposable income analysis.

| | | CONTESTED EXPENSES | | |
| --- | --- | --- | --- | --- |
| | | Debtors' Contested Scheduled Monthly Expenses | UST's Recommeded Expense Allowance | Allowed Reasonable & Necessary Contested Expenses [27] |
| Schedule I | 401(k) Plan | $ 389.22 | $ 0.00 | $ 389.22 |
| | 401(k) Loan | $ 487.80 | $ 0.00 | $ 487.80 |
| Schedule J | Incidentals and Car for Daughter | $ 400.00 | $ 0.00 | $ 400.00 |
| | Student Loan | $ 86.28 | $ 0.00 | $ 86.28 |
| | U.S. Bank (Overdraft Account) | $ 35.00 | $ 0.00 | $ 35.00 |
| | | Debtors' Schedules | UST's Recommendation | Actual Allowance |
| | Debtors' Net Income | $5,659.06 | $6,710.97 | $5,833.95 |
| | Debtors' Expenses | $5,632.08 | $5,110.80 | $5,632.08 |
| | **Disposable Income:** | $ 26.98 | $1,600.17 | $ 201.87 |

Excluding from a hypothetical Chapter 13 disposable income analysis the 401(k) plan contribution, the 401(k) loan repayment, and the monthly stipend for the

27. The Court treats the Debtors' monthly overdraft bank account and student loan payments as reasonable and necessary expenses only for the purposes of a hypothetical Chapter 13 disposable income analysis, as their inclusion as disposable income does not otherwise materially affect the outcome of this Court's substantial abuse analysis. This chart does not reflect the additional income taxes the Debtors would be assessed if their 401(k) contributions and loan repayments were terminated.

Debtors' daughter, and considering the implications a student loan repayment would have on distribution to general unsecured creditors, any of the Debtors' remaining disposable income available for distribution to those general unsecured creditors through a Chapter 13 plan would be nominal. With an available net monthly income of $5,833.95 and monthly expenses of $5,632.08, the amount of disposable income available for distribution over 36 months, without considering a Chapter 13 trustee's fees, the effect of a special class for student loans, and priority tax claims, would be only $7,267.32, or about 8% of the Debtors' scheduled unsecured claims. In addition, considering the Debtors' impending $28,000.00 of foundation repair work on their residence and the incidental costs and expenses associated therewith, general unsecured creditors would unlikely receive any substantive distribution *even if* the Debtors' income and expenses as set forth and discussed above produced net disposable income. Without additional indicia of "substantial abuse," the Court will not dismiss the Debtors' petition under section 707(b) simply because of an ability to pay a nominal, uncertain amount in a hypothetical Chapter 13 distribution.

## II. *Additional Factors*

The UST contends that the Debtors' omission of $174.89 in net income from their Schedule I illustrates a lack of good faith in the filing of their bankruptcy petition. Although this Court believes a debtor's complete and honest disclosure of income is necessary in any bankruptcy proceeding, minor inaccuracies on a debtor's schedules, absent additional indicia of bad faith, should not deprive an honest debtor of relief under the Code. In this case, the record suggests that the Debtors' petition for relief was not ultimately precipitated by bad faith, but by a number of unanticipated factors, such as Mrs. King's unanticipated unemployment and the impending $28,000.00+ in necessary foundation repairs to the Debtors' residence. The record is otherwise devoid of evidence that suggests the Debtors took affirmative action to mislead the Court or abuse the bankruptcy process. As a result, the Court does not find "substantial abuse" on grounds of bad faith.

Additionally, although the Debtors continue to support their college-aged daughter absent a legal obligation to do so, their schedules do not reflect an extravagant lifestyle. The Court believes that the Debtors' monthly projection for the cost of food ($350.00), clothing ($100.00), laundry and dry-cleaning expenses ($50.00), electricity and heating fuel ($166.00), and miscellaneous expenses ($0.00)[28] are actually low and may not meet their household needs. Although it is the role of counsel to aid debtors to accurately complete their schedules, it is within the province of this Court to account for over- and understatements of scheduled expenses within the totality of the circumstances. In the present case, if the Debtors' expenses are increased to a more realistic level, then even inclusion of net income from the annual bonuses[29] would not create a significant distribution to general unsecured creditors after payment of priority tax claims and the student loan balance ($10,353.60). In addition, any distribution to general unsecured creditors would be further reduced by an

---

**28.** The Court notes Debtors' scheduled expenses do not account for the general costs of their miscellaneous daily needs (e.g., paper towels, light bulbs, and other consumable goods).

**29.** The net after tax income from a $14,000.00 annual bonus would be approximately $817.00 per month.

increase of the Debtors' ongoing tax obligations resulting from the termination of their 401(k) contributions and loan repayment. Therefore, the general reasonableness of the Debtors' projected expenses, coupled with the otherwise conservative estimates for utility, clothing, miscellaneous expenses, and food costs discussed above, does not support finding "substantial abuse" in this case.

### III. *Conclusion*

 Viewed in the totality of the circumstances, the above factors persuade this Court to conclude that the UST's motion should be denied. It is doubtful that the Debtors are able to pay even a nominal, uncertain amount under a hypothetical Chapter 13 disposable income analysis. Any amount available to general unsecured creditors is insufficient to overcome section 707(b)'s presumption in favor of granting relief.[30] Moreover, this Court gives the benefit of any doubt to the debtor(s) and will dismiss a case only when substantial abuse is clearly present.[31] Here, there is no evidence before the Court that suggests the Debtors have been deliberately dishonest or deceptive or have otherwise acted in bad faith toward the Court or their creditors. The Debtors' financial condition and their impending expenses associated with the foundation repair of their residence support the finding that the Debtors are in need of the financial relief afforded by Chapter 7. In light of the foregoing discussion, and based on the totality of circumstances in this proceeding, this Court concludes that granting the Debtors a discharge would not constitute a substantial abuse of the provisions of Chapter 7. Therefore, the UST's Motion to Dismiss is denied.

---

**30.** *See In re Stewart*, 175 F.3d 796, 809 (10th Cir.1999) ("While we agree ability to pay is a primary factor in determining whether 'substantial abuse' occurred, we believe other relevant or contributing factors, such as unique hardships, *must also* be examined before dismissing a Chapter 7 petition.") (emphasis added); *see also In re Green*, 934 F.2d 568, 572–73 (4th Cir.1991) ("[I]n light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7.").

**31.** *See* 6 COLLIER ON BANKRUPTCY ¶ 707.04[5][a] at 707–27 (Lawrence P. King, ed., 15th ed. 2003) ("[I]t appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.") (citations omitted).