**In re Melissa Nicole Cordova BANKS, Debtor.**

No. 05–32492–HRT.

United States Bankruptcy Court, D. Colorado.

May 24, 2006.

---

**330**

Dale L. Fischer, Aurora, CO, for Debtor.

---

## ORDER DENYING MOTION TO DISMISS

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER comes before the Court on the United States Trustee's ("Trustee") Motion to Dismiss Chapter 7 Case Under 11 U.S.C. § 707(b) (the "Motion to Dismiss"). A hearing was held on April 24, 2006. The Court has reviewed the facts and arguments presented by the parties, as well as the pertinent legal authority, and hereby makes the following findings of fact and conclusions of law, pursuant to Fed.R.Bankr.P. § 7052.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b) and 28 U.S.C. § 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), as it concerns the administration of the estate and affects the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.

### DISCUSSION

#### I. STANDARD FOR § 707(b) "SUBSTANTIAL ABUSE"

Pursuant to 11 U.S.C. § 707(b), the Court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter." 11 U.S.C. § 707(b).

In order to dismiss a case under § 707(b), a Court must consider three elements: (1) the debtor is an individual; (2) the case involves primarily consumer debt; and (3) relief under Chapter 7 would be a "substantial abuse" of the provisions of Chapter 7. *See In re Wisher*, 222 B.R. 634, 636 (Bankr.D.Colo.1998). At the outset, the Court finds that Debtor is an individual and that the debt is primarily consumer debt. *Id.*

The remaining issue is "substantial abuse." The Code is silent as to what constitutes "substantial abuse"; thus, it has been judicially defined. In *In re Stewart*, 175 F.3d 796, 809 (10th Cir.1999), the Tenth Circuit adopted a "totality of the circumstances" standard for determining "substantial abuse." The factors to be considered include, *but are not limited to:* (1) unique hardships, such as sudden illness, calamity, disability, or unemployment; (2) cash advances and consumer purchases far in excess of an ability to pay; (3) excessive or unreasonable family budget; (4) accurate reflection of true financial condition in the debtor's schedules and statements of income and expenses; and (5) the debtor's good faith. *Id.* The Court will examine the "totality of the circumstances" surrounding Debtor's Chapter 7 petition.

In addition, § 707(b) states that "[t]here shall be a presumption in favor of

granting the relief requested by the debtor." 11 U.S.C. § 707(b). Collier on Bankruptcy explains:

> "[T]he statutory presumption is obviously meant to be something more than simply a rule about the burden of proof, since that burden would already have been on the party seeking to dismiss the case ... Therefore, it appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present" [whether the cause for dismissal is raised by the court *sua sponte* or on motion by the United States Trustee].

6 Collier on Bankruptcy ¶ 707.04[5][a] at 707–26 (Lawrence P. King, ed., 15th ed.2001)(footnotes omitted). Thus, the Court will give the benefit of the doubt to the Debtor and will not dismiss the Chapter 7 petition unless the Trustee overcomes the statutory presumption through a preponderance of the evidence indicating that substantial abuse is clearly present.

## II. EVIDENCE OF FUTURE INCOME CANNOT BE SPECULATIVE

■ A primary factor in a "substantial abuse" analysis is the debtor's "disposable income" that would be available to pay creditors under a hypothetical Chapter 13 plan. *See In re King*, 308 B.R. 522, 529 (Bankr.D.Kan.2004). Disposable income, as defined by the Code, is income "which is not reasonably necessary to be expended for the maintenance or support of the debtor." *Id.*

■ The evidence of a debtor's future income should not be "speculative." *Id.* (denying § 707(b) motion to dismiss based on speculative evidence of income from salary bonuses). The Court observes that a similar prohibition against "speculative" evidence is found in the feasibility tests for Chapter 9,[1] Chapter 11,[2] and Chapter 13 bankruptcies.[3] In effect, a § 707(b) action for "substantial abuse" in a Chapter 7 petition is the flip-side of a Chapter 13 feasibility inquiry, insofar as a § 707(b) inquiry also involves evaluating the debtor's finances under a hypothetical Chapter 13 plan. "Although success [of the plan] need not be certain or guaranteed, more is required than mere hopes, desires and speculation." *In re Mount Carbon Metro.*, 242 B.R. 18, 35 (Bankr.D.Colo.1999). *See also Ames v. Sundance State Bank*, 973 F.2d 849, 851 (10th Cir.1992) (Chapter 11 plan "must be based on concrete evidence and must not be speculative or conjectural").

Here, the Court finds the Trustee's evidence of Debtor's future income to be speculative.

### A. The Evidence on Commissions Income is Speculative

■ Trustee stakes much of his case on the assumption that Debtor will earn

---

1. *See, e.g., In re Mount Carbon Metro.*, 242 B.R. 18, 35 (Bankr.D.Colo.1999) (holding that Chapter 9 plan relying on executory public improvement agreements was "speculative" and therefore not feasible).

2. *See, e.g., Ames v. Sundance State Bank*, 973 F.2d 849, 851 (10th Cir.1992) (holding that speculative nature of proceeds from debtors' potential litigation did not meet feasibility requirement for Chapter 11 plan); *In re Orienta Coop. Ass'n*, 256 B.R. 508, 511–12 (Bankr. W.D.Okla.2000) (converting Chapter 11 to Chapter 7 after finding that debtor's plan, which relied on recovery of substantial amounts from lawsuit, were "speculative and contingent").

3. *See, e.g., In re Werden*, No. 99–11764–JMD, 2000 WL 33679431 (Bankr.D.N.H. Feb. 8, 2000) (denying confirmation of Chapter 13 plan where debtor's projected income from sales of subdivision lots was speculative, and therefore not "feasible").

greater than the $2,000 per month she currently makes on commissions as a mortgage broker. The evidence supporting a higher level of commission income is speculative.

At the outset, the Court notes that Trustee and Debtor agree that the Court should consider the Debtor's income and expenses as of February 1, 2006, going forward.

In previous years, Debtor made a considerable income working as a mortgage broker for Countrywide, earning $175,000 in 2003 and $80,000 in 2004. Debtor's income dropped significantly to approximately $50,000 for 2005. The change in income is attributable to a decline in the mortgage loan market following a rise in the general level of interest rates and the birth of her first daughter in 2004 and second daughter on November 9, 2005. While Debtor's earning potential decreased, her expense levels did not.

Beginning September 25, 2005, Debtor began working as a Business Development Manager for Indymac Resources, Inc., selling mortgage products primarily on the wholesale level to other lenders. Debtor earned approximately $5,000 per month at Indymac until April 1, 2006. As of April 1, 2006, Indymac adopted a new compensation scheme in which Debtor would receive a draw against commissions of $2,000 per month. In effect, if Debtor does not make more than $2,000 in commissions, she would be paid a $2,000 salary. Since April of 2006, Debtor has made only $1,700 in commissions, and thus received the $2,000 draw. This income is reflected in Debtor's Amended Schedule I, which was admitted into evidence.

Debtor testified that she works from home. Debtor often works seven days a week, and frequently works substantially longer than an eight-hour work day. Her working hours are all the more significant in light of the fact that she is a single mother of two young children, one aged 20 months, one aged 6 months. Debtor obviously faces a number of constraints in maintaining her business as a mortgage loan broker, let alone expanding her business beyond its current level.

The Court heard evidence on the market for mortgage loans, the Debtor's efforts to re-establish herself within the market, and opportunities to increase her current income as a mortgage broker. The evidence on the state of the mortgage market and Debtor's ability to increase her current income levels working in this market is not as clear and certain as either party contends. The Trustee asserts that the Debtor may be able to increase her income in a rising interest rate environment because certain borrowers (especially less creditworthy borrowers) will have to pay higher interest rates, fees and costs to obtain loans, thus resulting in higher commissions to mortgage brokers who place these loans.

Debtor counters that several factors may deter prospective borrowers from seeking loans, such as rising interest rates and rising gasoline prices. Even so, Debtor is optimistic concerning her prospects for business and expressed the hope that she will attain her previous level of income within six months. On redirect from her counsel, Debtor later testified that even if her income increased to $5,000 per month, she would not be able to meet her monthly expenses of $5,643 per month.

In evaluating the evidence of Debtor's future income, the Court has reviewed the cases of *In re Rose*, 101 B.R. 934 (Bankr. S.D.Ohio 1989) and *In re King*. In *In re Rose*, an Ohio bankruptcy court considered a Chapter 13 plan submitted by a debtor who was employed as a mortgage broker. *Id.* at 937–38. The debtor's Chapter 13

plan relied heavily on projected future earnings from mortgage loan commissions. *Id.* at 941–42. The Ohio bankruptcy court found the commissions income to be "speculative" and thus held that the debtor failed to meet his burden in establishing the feasibility of his Chapter 13 plan. *Id.* at 942.

The Kansas bankruptcy court in *In re King* considered a similar issue in a § 707(b) "substantial abuse" context. There, the U.S. Trustee argued that debtor could fund a hypothetical Chapter 13 plan with income from, among other sources, future salary bonuses paid by debtor's employer. The Trustee offered evidence of debtor's past bonuses and an indication of what bonus levels the debtor was likely to receive in the future. *In re King, supra,* at 529. The Court found otherwise, holding that the evidence of the debtor's projected future bonuses was "speculative" and refused to tie the debtor's potential Chapter 13 success "on factors so decidedly out of [his] control." *Id.*

Like the evidence on commissions and salary bonuses in *In re Rose* and *In re King,* the Court finds the evidence of Debtor's future commission income to be speculative. As Debtor testified, interest rates are currently rising and are likely to deter potential borrowers from seeking mortgage loans, thus making it unlikely that Debtor will generate the volume of additional income from mortgage loan commissions that the Trustee claims is possible.

The Court admires Debtor's optimism and commitment to expanding her business while caring for two young children, but it does not place much weight on Debtor's hopes. "Although success need not be certain or guaranteed, more is required than mere hopes, desires and speculation." *In re Mount Carbon Metro.,* 242 B.R. 18, 35 (Bankr.D.Colo.1999) (holding that Chapter 9 plan relying on executory public improvement agreements was "speculative" and therefore not feasible).

The Court believes that neither the Trustee nor the Debtor have provided a sufficient basis on which the Court can adequately determine the Debtor's future income. Accordingly, the Trustee has failed to prove that Debtor has the income sufficient to fund a Chapter 13 plan.

## B. The Evidence on Divorce/Support Payments is Speculative

The Trustee also argues that Debtor can expect support payments in the amount of $1,000 per month from her spouse once the divorce is finalized. The Court finds the support payments to be speculative as well.

Debtor testified she filed for a divorce from her husband in Arapahoe County, Colorado, on March 31, 2006, but that the divorce will not be final until June 12, 2006. The Arapahoe County District Court ordered Debtor's husband to pay $943 per month in child support payments. However, Debtor testified that, for the past four months, her husband has made child support payments of approximately $345 per month. Her husband has a job as a youth counselor and makes $2,500 a month in gross salary and approximately $1,600 in take home pay. Her husband has family in Virginia who may provide him financial assistance. Debtor also testified that her husband has gambling and drug addictions. In 2005, he was ejected from his automobile and sustained serious injuries while driving intoxicated after leaving a Colorado casino. Debtor and her husband incurred significant medical expenses, including expenses relating to the helicopter "flight for life" that transported her husband to a Denver-area hospital.

■ The Court notes that in the context of a Chapter 13 feasibility analysis, it is inappropriate for courts to speculate on child support payments and property divisions arising from a pending divorce for purposes of evaluation the feasibility of a Chapter 13 plan. *See In re Faulhaber*, 243 B.R. 281, 285 (Bankr.E.D.Tex.1999) (finding no "substantial abuse" after court refused to speculate on whether debtors' divorce would become final and, if so, what type of division of property rights might be imposed).

In light of these facts, the Court finds the evidence on future support from Debtor's husband also to be speculative. The Court notes that the hypothesized payments of $1,000 per month represents a majority of her husband's take home pay. The Trustee's suggestion that the husband will find another, better-paying job does not appear plausible given his past injuries and health problems and the specter of continuing addictions. It is just as likely that Debtor's husband may quit his job rather than pay his child support obligations, leaving the Debtor to face collection delays or expenses. As a result, the Court cannot reasonably find that the Debtor will receive a consistent stream of support payments, even if the state court so orders.

### C. The Evidence on Tax Refunds and Family Loans are Speculative

The Court finds that the Trustee's evidence on the likelihood of future tax refunds and future loans from Debtor's family to be speculative. *See, e.g., In re Harrison*, 203 B.R. 253, 256 (Bankr. E.D.Va.1996) (denying confirmation of Chapter 13 plan where debtor failed to demonstrate adequacy of future tax refunds or likelihood of either securing a credit line on home equity or securing loans from family members).

Debtor and her husband received a $4,000 tax refund for 2005. However, the Debtor testified that the refund was based on two incomes and reflects the deductions that are available from the payment of mortgage interest and real estate taxes. Debtor also testified that she is no longer making mortgage payments on the second home, so the corresponding interest and tax deductions do not appear available in the near future.

■ As to family loans, Debtor testified she had to borrow money from her parents to meet expenses. The Court does not view family loans as a feasible means to fund a Chapter 13 plan.

### III. *EVEN UNDER BEST CASE SCENARIO, CHAPTER 13 WOULD NOT BE FEASIBLE GIVEN DEBTOR'S REASONABLE FAMILY BUDGET.*

Under *In re Stewart*, the Court may consider the reasonableness of Debtor's family budget. *In re Stewart*, 175 F.3d at 809. The Trustee questioned the Debtor regarding several of her listed expenses. The Court finds her explanations credible for most items concerning the need for, and amount of, such expenses. Even assuming the best case scenario, in which all of Trustee's assumptions about Debtor's future income are correct, the Court finds that a hypothetical Chapter 13 plan would not be feasible given the reasonable expenses of $5,643 listed on Debtor's Amended Schedule J.

Debtor testified that she is a single mother of two children under the age of two years. She spends an average of $800 per month on items including food, diapers and other incidentals for the children, and client meals. The Court finds that the expenses relating to the care of two small children are reasonable. The Court also finds it reasonable for Debtor to purchase

meals for current and prospective clients to maintain her mortgage business.

Debtor has additional expenses relating to day care for the children three days a week. Although such expenses represent a fairly large percentage of the Debtor's income, the Court finds that the additional expenses for children of that age are reasonable. It is unlikely that Debtor could significantly reduce these expenses without also lowering her income to care for her children.

Debtor testified that the furniture expenses on her Foley's credit card and reported on her Schedules reflect the purchase of a new mattress, springs, and bumpers for her two-year-old daughter who outgrew her crib.

Debtor reduced her expenses by purchasing a new, smaller, fuel-efficient car. Even so, Debtor's mortgage business requires her to drive frequently to meet with clients in the Denver Metro area, as well as locations up and down the Front Range of Colorado. The Court finds Debtor's expenses for fuel and vehicle maintenance to be reasonable.

Debtor testified that she maintains two residences, a house located at 20575 East Maplewood Place, Centennial, Colorado, and a townhome at 16942 East Warren Place, # B, Aurora, Colorado. Debtor resides at the townhome with her daughters. She has put the house in Centennial on the market and hopes to sell it via a short sale. Debtor testified that she maintains utilities at the house for the purpose of showing it to prospective buyers. Although the Court questions the wisdom of maintaining the second residence, and questions the likelihood of a successful short sale, it does not find the expenses unreasonable. It is unlikely that the secured creditor may allow this situation to continue for much longer since the Debtor is not paying her monthly mortgage.

The Trustee devoted a significant portion of his cross-examination to Debtor's expenses at a Denver area hair salon outside of her neighborhood. Debtor testified that she required hair salon services to maintain a professional appearance for the solicitation of clients. The Court finds Debtor's salon expenses to be reasonable under the circumstances.

The Court also heard testimony from Trustee's export accounting witness. The Court notes that the expert's analysis, done in March, 2006, was based on Debtor's original filings, and did not reflect Debtor's current income and expenses in her Amended Schedules I and J. On reviewing Debtor's Amended Schedules I and J, the expert conceded that the Debtor would not be able to fund a Chapter 13 plan, without having the higher income levels that the expert projects or reducing expenses to account for the Debtor's current income level. In light of this, the Court cannot give much weight to this testimony concerning the Debtor's financial condition.

As for Debtor's income, the Court finds it unlikely that Debtor will make substantially more than $2,000 in commissions per month in the immediate future given current market conditions for mortgage loans. If Debtor fails to generate commissions greater than $2,000 for a significant number of months, Debtor's employment with Indymac could likely be in jeopardy. Trustee also focused on Debtor's $3,500 "guarantee," or signing bonus, paid by Indymac in 2006. This is a one-time payment and is not a basis for projecting future earnings.

In sum, the Court finds that Debtor would have to more than double her current income of $2,000, and receive at least $945 per month in child support payments, to meet her current reported expenses of

$5,643 per month. Even based on the alternative income and expense scenario postulated by the Trustee, the Debtor would have to double her current $2,000 income and current support payments of $375 per month to reach the projected gross income of $4,676, and also reduce her expenses by about $2,000 ($5,643 to $3,614) to fulfill the Trustee's version of an income stream to support a confirmable plan. The Court concludes that this neither of these prospects form a feasible basis for a Chapter 13 Plan. *See In re Stewart*, 175 F.3d at 809.

## IV. REMAINING IN RE STEWART FACTORS

The Court will also consider the remaining *In re Stewart* factors:

### A. Unique Hardships

■ The Court finds that Debtor's status as a single mother of two children under the age of two years, her husband's addictive behavior, and her pending divorce, are "unique hardships" that weigh against a finding of "substantial abuse." *In re Stewart*, 175 F.3d at 809.

### B. Consumer Purchases/Cash Advances

Debtor has not made unreasonable consumer purchases or unreasonable cash advances in excess of her ability to pay. *Id.* In fact, the opposite seems to be the case. Debtor has depleted her savings, exhausted the funds in her IRA, and incurred IRA tax penalties in order to pay family expenses. Rather than borrow against her credit card to fund her expenses, Debtor has received loans from her parents.

### C. Accurate Reporting

The Court notes that the Debtor's original Schedules I and J showed significant disposable income from which a Chapter 13 plan might be funded. Given such information, the Court believes that it was appropriate for the Trustee to file the Motion to Dismiss. However, the evidence shows that these Schedules do not reflect the marked change in circumstances experienced by this Debtor that was in progress when she filed her Chapter 7 case and which continued after that date. Although Debtor's original Schedules I and J may have inaccurately reported her income, these Schedules were later amended and were reasonably explained or justified by the Debtor. The Court finds no substantial abuse relating to the amended Schedules. *Id.*

### D. Good Faith

Finally, the Court finds Debtor has sought Chapter 7 liquidation in good faith, and has made good faith efforts to maintain employment income despite a pending divorce and responsibilities for two small children. *Id.*

## V. CONCLUSION

Considering the "totality of circumstances" of Debtor's petition for Chapter 7 bankruptcy, including the specific factors listed in *In re Stewart*, the Court holds that the Trustee has failed to meet his burden in establishing "substantial abuse." *In re Stewart*, 175 F.3d at 809.

For the foregoing reasons, the Trustee's Motion to Dismiss is DENIED.