In re ORIENTA COOPERATIVE ASSOCIATION, Debtor.

No. BK–00–11189–WV.

United States Bankruptcy Court, W.D. Oklahoma.

Dec. 1, 2000.

David C. Butler, McKnight & Gasaway, P.C., Enid, for Debtor.

Douglas L. Jackson, Gungoll, Jackson, Collins & Box, P.C., Enid, for Creditors.

## ORDER ON MOTION TO CONVERT OR FOR APPOINTMENT OF TRUSTEE

THOMAS M. WEAVER, Bankruptcy Judge.

Creditors, Custer City Farmers Cooperative Exchange and Farmers Cooperative Exchange of Weatherford (collectively, "creditors"), filed their motion requesting conversion of the instant case to Chapter 7, or in the alternative the appointment of a Chapter 11 trustee. After an evidentiary hearing, the court took the matter under advisement.

After having considered the evidence and the applicable law, the court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Fed. R.Bankr.P.

The material facts are essentially undisputed. They are:

1. Debtor–in–Possession, Orienta Cooperative Association ("debtor"), is an agricultural cooperative formerly engaged in the business of operating a grain elevator. Debtor's operation included the storage of grain and the purchase and sale of grain and other agricultural products.

2. After an involuntary petition had been filed against debtor, an order granting the requested relief was entered, followed by debtor's motion to convert to Chapter 7. The conversion was authorized by Order of April 20, 2000.

3. In the course of these proceedings, debtor has liquidated all of the assets it formerly used to conduct its business operation. With the liquidation proceeds, debtor has paid most or all of its secured debt and has some cash reserves remaining.

4. At the request of the Oklahoma Department of Agriculture, debtor surrendered its license to operate as an agricultural cooperative.

5. Presently, debtor has no offices, no business location and no telephone. The only mailing address for debtor is the address of one of the its directors.

6. Debtor has no employees.

7. Debtor does not carry on any business activity whatsoever.

8. The monthly operating report of debtor as of September 30, 2000, shows a

balance of cash of approximately $95,000, trade receivables of nearly $31,000 and stock in another cooperative valued at approximately $40,000. The only other assets consist of certain choses in action, as discussed *infra*, the value of which is stated as "unknown."

9. A considerable number of payments were made by debtor within the 90 day preference period preceding bankruptcy. Most of these payments were to farmers who are among the owners of debtor. No preference actions have been brought to recover any of the payments because most of the transactions were "normal", according to debtor's president.

10. One of debtor's directors has a past due account balance and no action has yet been brought to collect this balance. Debtor's president testified that, if necessary, an action would be brought to collect the balance.

11. The Board of Directors of debtor continues to meet on a monthly basis and sometimes more often.

12. There have been no discussions among the board members that debtor might have a claim against individual members of the Board of Directors.

Debtor's evidence revealed that one of its choses in action is a pending lawsuit which it brought against its former manager, Greg Hunt, in which it seeks the recovery of approximately four million dollars. The basis of the action is Hunt's alleged embezzlement and mismanagement. Some discovery has been accomplished in the case, and debtor is apparently actively pursuing the litigation. Debtor's litigation counsel is the same attorney who also serves as its bankruptcy counsel.

The other chose in action involves an alleged claim against a firm of certified public accountants which served as auditor for debtor. Debtor has recently retained the services of an Oklahoma City law firm for the purpose of bringing an action against the CPA firm for alleged malprac-tice in failing to detect the misappropriations of debtor's former manager.

Two of debtor's directors testified that they are actively assisting in the pursuit of their claims against the former manager and the auditor. Among other things, they have assisted in the necessary reconstruction of the books and records of the business. Debtor contends that the cooperation and assistance of the directors is essential to a successful outcome in both the existing and the proposed litigation. Debtor's vice-president testified that the directors would not have as much incentive to assist in the litigation if the case were converted to Chapter 7.

Debtor contends that in order for it to be able to reorganize and become a viable business, it would have to achieve a substantial recovery in the pending litigation and/or the proposed litigation. It could use the funds obtained to acquire a business location and construct the necessary structures with which to resume the operation of its business. If a substantial recovery were obtained, debtor's vice-president expressed optimism about obtaining capital contributions from debtor's members.

Debtor offered no specific estimates or projections as to the amount of funds which would be required to purchase or lease the land or construct the required structures. A figure of two million dollars was suggested by debtor's counsel as a sufficient amount.

Debtor failed to offer any evidence as to the likelihood of a successful recovery in either the pending litigation against the former manager, or in the proposed litigation against the CPA firm. Further, there was no evidence of whether debtor's former manager had sufficient assets or insurance coverage from which any judgment or settlement might be collected. Debtor did not offer any evidence as to a time frame within which it was believed that a successful result could or would be obtained in either the pending or proposed litigation. The gist of debtor's request was that it should be allowed some nonspe-

cific period of time within which to pursue its claims.

The respective positions of the parties are quite simple. The creditors maintain that debtor has no ongoing business to preserve and no assets with which to reorganize, and therefore the case should be converted to Chapter 7. Debtor contends that it has good and valid claims which it should be allowed to pursue in litigation and if successful, it would have the ability to reorganize. The debtor argues that dismissal at this time would be premature, in any event.

The debtor's exclusive period within which to file a plan expired on August 14, 2000. The debtor did, however, file a timely motion to extend the exclusive period for an additional 180 days. The court has held the motion for extension in abeyance pending the outcome of the instant motion.

11 U.S.C. § 1112(b) provides that the court may convert a Chapter 11 case to a case under Chapter 7 for cause, including:

(1) Continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(2) Inability to effectuate a plan;

(3) Unreasonable delay by debtor that is prejudicial to creditors.

■ Subsection (2) above is the most relevant here. This ground deals with whether it is reasonable to expect that a plan can be confirmed within a reasonable amount of time in the Chapter 11 case. 7 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 1112.04[5][b], (15th ed.2000), (hereafter "Collier").

■ In this circuit, a bankruptcy court has broad discretion under § 1112(b) and may dismiss or convert a Chapter 11 case if the debtor lacks the ability to formulate a plan or to carry one out. *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989). In *Hall*, the debtors failed to file an acceptable plan within eight months of the filing of the Chapter 11 petition. Upon the creditors' request for dismissal rather than conversion, the court dismissed the case.

■ The two recognized policies, underlying Chapter 11 are "preserving going concerns and maximizing property available to satisfy creditors." *Bank of America Nat'l Trust Assn. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999). Generally, if continuing a Chapter 11 case would promote these two goals, then probably the case should not be converted or dismissed, Collier at ¶ 1112.04[4][a] at 1112–25.

■ It is clear that at the present time debtor has no business assets with which to recommence its agricultural cooperative business, nor does debtor have sufficient funds with which to acquire such assets. Debtor's ability to reorganize is solely dependent upon its recovery of a very substantial sum from its pending suit against its former manager and the proposed litigation against its auditors.

The question thus becomes whether it is reasonable to believe that such a substantial recovery may be achieved within a reasonable period of time. The pending litigation is in the discovery stages, and apparently it is uncertain when the case will be tried. More uncertain is the likelihood of obtaining a significant recovery. The proposed litigation against the CPA firm is fraught with even more uncertainties. How strong is debtor's claim against the auditors? How difficult will it be to prove the merit of the claim? The court was given little or no guidance as to how these questions should be answered. The court was merely asked to allow the debtor more time to pursue the claims.

Perhaps the only certainty with regard to the action against the CPA firm is that the firm, and its insurers, can be expected to mount a vigorous defense to claims that the firm committed malpractice. It is quite reasonable to assume that such litigation may continue for years.

There is simply no evidence from which this court might conclude that debtor is likely to obtain substantial sums of money with which to reorganize within any reasonable time frame. It is mere speculation to suggest otherwise. Even though it is relatively early in this Chapter 11 proceeding, debtor's hopes for a successful reorganization are likely to remain speculative and contingent for the foreseeable future.

Debtor argues that the assistance of its directors is essential for the prosecuting of its claims against the former manager and the CPA firm and that the directors' incentive to help would be greatly lessened if the case were converted to Chapter 7. It is the court's observation, however, that while the directors who testified appear to be most conscientious and sincere, they are unsophisticated in financial matters of the type involved in the prosecution of the claims. Thus, their assistance would be of somewhat limited value, regardless of whether the case remains in Chapter 11.

The holding of *Little Creek Devel. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Devel. Co.)*, 779 F.2d 1068, 1073 (5th Cir.1986) is instructive in this regard. There, the court ruled that resort to Chapter 11 is improper where there is no going concern to preserve, there are no employees to protect and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." While at this stage the court does not characterize debtor's hope of rehabilitation as constituting "terminal euphoria," there is certainly no going concern to preserve here, nor are there any employees to protect.

The court finds that creditors have sustained their burden of establishing that cause exists under § 1112(b) for the conversion of this case to a case under Chapter 7, or for the dismissal of this case, "whichever is in the best interest of the creditors and the estate." The fact that the creditors are seeking conversion rather than dismissal is indication that it is in the best interest of the creditors to convert the case to Chapter 7 rather than to dismiss it.

*Hall v. Vance*, 887 F.2d at 1044. The Chapter 7 trustee will be able to pursue debtor's claims against its former manager and its auditors, if the claims are deemed meritorious. All unsecured creditors will benefit, of course, from any recovery obtained. Further, the Chapter 7 trustee can determine whether preference actions should be pursued.

### Conclusion

For the reasons stated above, this case should be converted to Chapter 7. The conversion of this case to Chapter 7 renders moot the creditors' motion for the appointment of a Chapter 11 trustee. Thus, the creditors' motion to convert the case to Chapter 7 is granted, and the motion for the appointment of a Chapter 11 trustee is denied. Debtor's motion to extend the exclusive period within which to file a plan is also denied as moot.

IT IS SO ORDERED.