

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>BKS CAMBRIA, LLC,<br>　　　　　　Debtor. | BAP No. CC-25-1141-NGC<br><br>Bk. No.9:25-bk-10631-RC |
| BKS CAMBRIA, LLC,<br>　　　　　　Appellant,<br>v.<br>BLIZZARD ENERGY, INC.,<br>　　　　　　Interested Party. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California, Northern Division
Ronald A. Clifford III, Bankruptcy Judge, Presiding

Before: NIEMANN, GAN, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Debtor BKS Cambria, LLC ("Debtor") appeals an order issued sua

sponte by the bankruptcy court converting Debtor's case from one under

chapter 11 to one under chapter 7 (the "Conversion Order").[1] The

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

Conversion Order was entered after Debtor failed to timely respond to an order to show cause why the bankruptcy case should not be dismissed or converted (the "OSC"). The OSC, in turn, was issued in light of issues flagged by the court at Debtor's initial status conference.

Debtor asserts the Conversion Order was improper because (1) the time provided to respond to the OSC created a lack of due process, (2) the order was issued before the expiration of the period allowed to file a proposed plan of reorganization, (3) conversion accommodates one creditor at the expense of Debtor and other creditors, and (4) no cause for conversion exists under § 1112(d)[2].

Finding no error in the bankruptcy court's issuance of the OSC or abuse of discretion in the bankruptcy court's issuance of the Conversion Order, we AFFIRM.

## FACTS[3]

### A.    Prepetition Background

Debtor owns a 34-acre piece of real property located in Cambria, California (the "Property"). The Property is the former site of the Cambria

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[2] Debtor likely meant § 1112(b)(4) which provides a non-exclusive list of circumstances constituting "cause" for conversion or dismissal. Section 1112(d) only applies to cases under chapter 12 or chapter 13.

[3] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and related proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Air Force Station, which was built in the 1950s and closed around 1982. The Property contains several structures, most of which are uninhabitable due to asbestos contamination. Debtor's 50% owner and principal, Bernd Schaefers, resides in the one habitable building.[4] Portions of the habitable building are also rented to three residents. Two additional parties rent portions of the space for storage.[5] Two wireless companies have leases with Debtor to house their antennae on an air tower.

In 2015, Blizzard Energy, Inc. ("Blizzard")[6] sued Mr. Schaefers and others in Kansas state court for fraudulent inducement and related claims. After a two-week jury trial, a $3,825,000 judgment was entered in Blizzard's favor. Blizzard then brought an action in California state court to domesticate the judgment against Mr. Schaefers (the "California Action"). The sister-state judgment entered in the California Action totaled $3,836,883.64 (the "Judgment").

In 2019, Blizzard brought a motion to amend the Judgment to add Debtor as a judgment debtor. Mr. Schaefers filed a personal bankruptcy case and, as relevant here, removed the California Action to the bankruptcy court, where it was remanded back to California state court.[7] After

---

[4] Mr. Schaefers' ex-wife holds the remaining 50% interest in Debtor.

[5] The residential and storage leases have been rejected by the chapter 7 trustee.

[6] Blizzard filed a responsive brief in this appeal as an interested party.

[7] After the close of briefing in this appeal, Debtor filed a request for judicial notice (the "Request"). The items attached to the Request—which relate to the

3

Mr. Schaefers' bankruptcy case was closed, the Judgment was eventually amended on March 6, 2025 to add Debtor as a judgment debtor.

**B.      Bankruptcy Filing and Status Conference Report**

On May 12, 2025 (the "Petition Date"), Debtor filed a voluntary chapter 11 bankruptcy petition, without any other case commencement documents. The bankruptcy court entered three notices of deficiency setting forth the missing items and corresponding short deadlines for filing. An order was also issued setting an initial status conference for July 9, 2025 (the "Status Conference").

A few weeks later, Debtor filed an application to employ Wiley Ramey as Debtor's bankruptcy counsel (the "Employment Application"). Four separate deficiency notices were docketed by the bankruptcy court with respect to the Employment Application. Debtor took no action to correct the noted deficiencies.

Debtor then filed a status conference report (the "Status Conference Report"), as required by the court's order setting the Status Conference. The Status Conference Report indicated the bankruptcy case was filed to stop a pending tax default sale by San Luis Obispo County. Debtor had not paid real property taxes since 2020 and owed approximately $470,617 as of the Petition Date. The report also indicated the Property is subject to a

---

underlying Judgment and actions taken in Mr. Schaefers' personal bankruptcy case—are not relevant to the issues presented and do not impact our decision. The Request was neither timely filed nor properly served, and is, therefore, denied.

judgment lien by Blizzard, with an appeal pending in state court.[8] Debtor further reported that the Property generated barely enough income to maintain it.[9] In light of this lack of cashflow, Debtor proposed to sell the Property.

Finally, the Status Conference Report addressed the retention of two professionals: Mr. Ramey, as Debtor's attorney, and Karin Magnison, as an appraiser for the Property. Debtor stated that Mr. Ramey had represented Mr. Schaefers "since October 2017" in Mr. Schaefers' litigation with Blizzard—the same litigation that later added Debtor as a judgment debtor. Mr. Ramey's agreed billing rate was noted as $375 per hour, with an estimated total of $5,000-$7,000 in fees per month. The appraiser's fee was noted as $1,850.

## C.     Feedback from U.S. Trustee and Blizzard

The U.S. Trustee filed an objection to the Employment Application. The objection noted the application was deficient in many respects and failed to: (1) specify whether the professional seeks employment under § 328 or § 330, (2) be served on creditors, (3) disclose the terms and conditions of employment, (4) disclose payments to applicant and sources

---

[8] Debtor scheduled only two creditors: Blizzard and the County of San Luis Obispo. Blizzard filed a proof of claim in the amount of $6,757,120.01, with the principal amount of the prepetition judgment listed as $3,836,883.64 and the $2,920,236.37 balance representing interest accrued through the Petition Date.

[9] Monthly income was $3,052 for the tower antennae leases and $1,300 from the tenants. Expenses included $1,351 per month for the manager, Mr. Schaefers.

thereof, (5) disclose whether the services of any other professionals would be billed to the estate by applicant, (6) attach an attorney retainer agreement and declaration by the client regarding the representation, (7) report on the status of a $7,500 prepetition retainer[10], and (8) disclose the extent of applicant's prior representation of Debtor and related entities.

On July 2, 2025, Blizzard filed a statement regarding the Status Conference (the "Initial Comments"). The Initial Comments described the current bankruptcy case as "the latest salvo" in the continued litigation between the parties and detailed multiple problems with Debtor's bankruptcy case including:

- The case was filed as both a single asset real estate ("SARE") and a Subchapter V case—designations that are mutually exclusive. After a Subchapter V Trustee was appointed, Debtor filed an amended petition to remove the Subchapter V designation.

- The employment of Debtor's proposed counsel was not approved and likely cannot be approved because counsel is not disinterested.

- Debtor had not brought an application to employ the appraiser discussed in the Status Conference Report.

- No application to employ a real estate broker had been submitted, although Debtor was quickly running out of the 90 days allowed to propose a plan in a SARE case.

- Debtor failed to comply with required disclosures and local rules. Blizzard noted that many filings were flagged as deficient upon

---

[10] A $7,500 retainer is noted on the Disclosure of Compensation of Attorney for Debtor filed on May 23, 2025. The retainer is not mentioned in the Employment Application.

6

filing, and the re-filings were still incomplete even after multiple attempts to correct.

- Debtor failed to disclose prepetition transfers to insiders, and insiders continued to receive postpetition transfers without prior court approval.

- Since there are only two creditors—Blizzard, who will "never vote" to accept a plan proposed by Debtor, and a taxing authority—Debtor, as a chapter 11 debtor-in-possession, will never have the consenting impaired class necessary to confirm a proposed plan of reorganization.

- Debtor, whose secured debts far exceed the value of Debtor's assets, has no remaining interest to be preserved through a reorganization.

- Debtor "took steps on the verge of filing to actively interfere with the marketing the Property." Specifically, each of the five leases to alleged residents and for storage was entered into within six weeks of the Petition Date. Debtor's bank records reveal no prepetition rent was paid by the tenants. Two of the leases also require at least 12 months' notice to terminate.

- Debtor does not appear to have valid property insurance.

The Initial Comments concluded by asking the bankruptcy court to exercise its discretion, as noted in the order setting the Status Conference, to convert the case to chapter 7.

The bankruptcy court issued a tentative ruling prior to the Status Conference requiring Debtor's proposed counsel to appear in person and further noting that the Court had concern regarding Debtor's representation in this case.

7

The afternoon before the Status Conference, Debtor filed a response to the Initial Comments. Debtor's response primarily addressed the history of litigation between Mr. Schaefers and Blizzard. The only statement not related to that litigation was that Debtor's manager, Mr. Schaefers, resided on the premises and maintained a tower with an antenna that requires daily surveillance due to high winds.

**D.    Order to Show Cause and Responses Thereto**

The Status Conference went forward as scheduled. The docket minutes reflect that the Status Conference was continued for 3 weeks, with the bankruptcy court to issue an OSC.[11] The OSC was entered the following day. The OSC began by noting the deficiencies in the Employment Application and the U.S. Trustee's objection. The order then noted the case was proceeding as a SARE and, although the 90-day period for action provided in § 362(d)(3) had not yet lapsed, no plan of reorganization had been filed to date. The OSC acknowledged the bankruptcy court's consideration of the Status Conference Report, Initial Comments, and oral arguments and representations made at the Status Conference in issuing the OSC.

Debtor was ordered to file a written response to the OSC by July 17, 2025, demonstrating why Debtor's case should not be dismissed or converted to one under chapter 7. The OSC further provided: "Failure to

---

[11] The transcript from the Status Conference was not provided on appeal.

8

file a written response may be deemed consent to the dismissal or conversion of the case." The U.S. Trustee and any other party in interest was allowed, but not required, to file a response by July 24, 2025. The OSC was scheduled to be heard on July 31, 2025 along with the continued Status Conference.

Debtor did not file a written response to the OSC by the deadline. A week after the deadline, Debtor filed three sets of documents: (1) a motion to sell the Property and to employ two joint real estate brokers (the "Sale Motion"); (2) another application to employ Wiley Ramey as bankruptcy counsel (the "Renewed Employment Application"); and (3) a response to the OSC, which Debtor docketed as a response to the Sale Motion (the "OSC Response").

The Sale Motion attached an appraisal by Kristen M. Magnussen, dated over a month earlier, appraising the "as is market value" of the Property at $620,000. Despite this appraised value, Mr. Schaefers submitted a declaration in support of the Sale Motion stating he decided $3.5 million was the appropriate listing price, no bank would finance the purchase of the Property, a private investor would need to be found as the purchaser, and Mr. Schaefers had two brokers willing to list the Property. The Sale Motion indicated the Property would be listed between August 15, 2025 (before the Sale Motion was scheduled to be heard) and February 15, 2026 and, thereafter, sold in accordance with § 363. The brokers would receive a 5% commission to be split between them. Finally, the Sale Motion argued a

9

$600,000 homestead exemption asserted by Mr. Schaefers in the Property—raised in a proof of claim filed by Mr. Ramey on behalf of Mr. Schaefers three days earlier—should be resolved in a "to be determined" action in state court with the proceeds held in trust pending the outcome.

The Renewed Employment Application was filed three times on July 24, with the attachments varying slightly in each filing. Each batch indicated the application was brought under § 328. Mr. Ramey sought both a "non-refundable no look" fixed fee of $7,500[12] (which was said to cover the filing fee, petition, and case commencement documents prepared postpetition) and hourly fees going forward, at the rate of $375 per hour, after the bankruptcy court's approval of his employment. In his supporting Statement of Disinterestedness, Mr. Ramey noted his past and current representation of Mr. Schaefers in the litigation with Blizzard but argued such concurrent representation did not create a conflict for his representation of Debtor, rather Mr. Ramey asserted that it was Debtor who has the adverse interest, but the adverse interest would not cause unlawful discrimination against any creditor. A proof of service indicated the Renewed Employment Application was served on counsel for U.S. Trustee and Blizzard.

---

[12] The "no look" fee component appears to be a reference to the presumptively reasonable flat fee for a chapter 13 bankruptcy case under the local rules of the bankruptcy court. Those provisions do not apply in a chapter 11 case, nor are they applicable when the counsel seeks ongoing fees on an hourly basis. *See* Local Bankruptcy Rules for the Central District of California, Rule 3015-1(v).

10

The OSC Response opposed the OSC on the ground that neither dismissal nor conversion was in the interest of any creditor other than Blizzard. The OSC Response requested the bankruptcy court take judicial notice of the Sale Motion filed earlier that same day. The OSC Response then asserted only Mr. Schaefers was qualified and willing to serve as caretaker for the Property and, if the case was converted to chapter 7, there would be no reason for Mr. Schaefers to remain or work on the Property.

About three hours before the OSC Response was late filed by Debtor, Blizzard timely filed its own response to the OSC (the "Second Response"). The Second Response noted Debtor had failed to file employment applications for the appraiser, the real estate brokers, or an accountant that was referenced in the bank records obtained by Blizzard. Direct conflicts of interest by both Mr. Schaefers and Mr. Ramey were also highlighted.[13] Deficiencies in the monthly operating report filed by Debtor were noted. For example, the report referenced a payment from "BofA" without the attachment of a corresponding bank statement. Finally, the Second Response emphasized Debtor had not substantively responded to the problems detailed in the Initial Response, including the lack of an impaired

---

[13] Blizzard alleged both Mr. Schaefers and Mr. Ramey received undisclosed payments shortly before the Petition Date and Mr. Schaefers continued to receive unauthorized payments postpetition. Mr. Schaefers was further noted as adverse to Debtor in light of his proof of claim filed against Debtor a few days prior and his tenancy on the Property that would impede its sale.

consenting class for any proposed plan of reorganization and the seemingly improper leases executed shortly before the Petition Date.

At the hearing on the OSC, the bankruptcy court began by noting Debtor had failed to file a timely response. After oral argument from both Mr. Ramey and Blizzard's counsel, the court indicated it would convert or dismiss the case today. The court questioned the utility of appointing a chapter 7 trustee when Blizzard was undersecured by some wide margin. Blizzard's counsel responded that it would be far easier to sell the Property and pay the outstanding taxes and professional fees through a chapter 7 trustee, rather than requiring Blizzard to return to state court to effectuate the sale. The court deemed Debtor's failure to timely respond to the OSC as acquiescence to the conversion or dismissal, with that decision to be made at the court's discretion upon consideration of the views of the sole secured creditor.[14] The court then found cause to convert the case to chapter 7. The Conversion Order was entered the next day.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

---

[14] Although the bankruptcy court referenced Blizzard as Debtor's "sole" secured creditor, the County of San Luis Obispo was also a secured creditor through its real property tax lien secured by the Property.

**ISSUES**

1.　　Was Debtor denied due process by the amount of time allowed for Debtor to respond to the OSC?

2.　　Did the bankruptcy court abuse its discretion in converting Debtor's chapter 11 case to chapter 7 upon Debtor's failure to timely respond to the OSC?

**STANDARDS OF REVIEW**

"Whether a person's due process rights have been violated is a mixed question of law and fact, which is reviewed de novo." *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002). Under a de novo review, we look at the matter anew, "giving no deference to the bankruptcy court's determinations." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011).

"The bankruptcy court's decision to convert a chapter 11 case to chapter 7 is reviewed for an abuse of discretion." *In re NTI-NV, Inc.*, BAP No. NV-22-1248-BCL, 2023 WL 4030563, at *3 (9th Cir. BAP 2023) (citing *Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 806 (9th Cir. 2001). "We will reverse the bankruptcy court only if its decision was based on an erroneous conclusion of law or when the record contains no evidence on which the bankruptcy court rationally could have based its decision." *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 965 (9th Cir. 2022) (cleaned up) (converting chapter 11 case to chapter 7 under § 1112(b)), *cert. denied sub nom.*, 143 S. Ct. 424 (2022).

13

**DISCUSSION**

**A.      Debtor was not denied due process in the time allowed to respond to the OSC.**

Debtor raises a due process challenge on appeal. Specifically, Debtor argues the seven days provided for Debtor to respond to the OSC was insufficient under the circumstances. "Where an appellant contends that the bankruptcy court's procedures were deficient, or that the court erred by failing to provide adequate notice and opportunity, the appellant must show prejudice from the procedural deficiencies." *Wolverine Endeavors VIII, LLC v. E. W. Bank (In re King)*, 664 B.R. 356, 370 (9th Cir. BAP 2024) (citations omitted).

Debtor has failed to show either a procedural deficiency or an alleged prejudice arising therefrom. The OSC was entered the day after the Status Conference, where the bankruptcy court required Debtor's counsel to attend in person to address the court's concern regarding Debtor's representation in this case. The OSC was essentially Debtor's second bite at the apple for compliance with the detailed information required in the order setting the initial Status Conference. The hearing on the OSC was scheduled for 21-days later.[15] The issues the OSC directed Debtor to promptly address in writing were the same issues identified by the U.S. Trustee and Blizzard weeks earlier and, thereafter, discussed at the Status

---

[15] Blizzard notes the 21-days' notice and briefing schedule provided in the OSC is consistent with the local bankruptcy rule, which would apply if the OSC had instead been a motion.

Conference. Debtor had more than ample notice and opportunity to address the flagged deficiencies.

Further, Debtor did not request an extension or otherwise challenge the deadlines set forth in the OSC. Instead, Debtor ignored the deadline provided and filed an untimely response a week later.[16] When the court noted, after Mr. Ramey's initial oral argument at the hearing on the OSC, that no timely response had been filed, Mr. Ramey responded:

> There's a response on file. We had to prepared [sic] a motion to schedule a sale and locate realtors that would help us. I needed the time to do that in. That is a response on file and I just explained what our plan is.

Hr'g Tr. at 6:14-16 (July 31, 2025). The bankruptcy court did not accept this attempted justification, nor does this Panel independently. Debtor was afforded due process as to the OSC and chose not to take the opportunity given.

**B.** **The bankruptcy court did not abuse its discretion in converting Debtor's chapter 11 case to chapter 7.**

The statutory authority for conversion of a chapter 11 case is found in § 1112(b), which provides a case shall be converted or dismissed upon a showing of "cause."[17] Any party in interest may request conversion or

---

[16] That untimely OSC Response did not substantively address most of the deficiencies in Debtor's case flagged by the parties and the bankruptcy court. Instead, the OSC Response focused on arguments in favor of the Sale Motion.

[17] Section 1112(b)(1) provides:

dismissal. *See* § 1112(b)(1). Alternatively, the bankruptcy court may sua

sponte dismiss or convert a case under § 1112(b) and § 105(a) if there is

cause to do so. *See Labonkoff v. United States Tr. (In re Labonkoff)*, BAP No.

NC-09-1300-PaJuKw, 2010 WL 6259969, at *5 (9th Cir. BAP June 14, 2010).

The decision of whether to convert or dismiss, upon a showing of cause, is

left to the sound discretion of the bankruptcy court as to the best interests

of creditors and the estate. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604,

612 (9th Cir. BAP 2014). However, if "unusual circumstances [establish]

that converting or dismissing the case is not in the best interests of

creditors and the estate," then § 1112(b)(2) prohibits such relief even if

cause otherwise exists.[18] § 1112(b)(2); *see also Sullivan*, 522 B.R. at 612. Thus,

---

Except as provided in paragraph (2) and subsection (c), on request of a
party in interest, and after notice and a hearing, the court shall convert a
case under this chapter to a case under chapter 7 or dismiss a case under
this chapter, whichever is in the best interests of creditors and the estate,
for cause unless the court determines that the appointment under section
1104(a) of a trustee or an examiner is in the best interests of creditors and
the estate.

[18] Section 1112(b)(2) provides:

The court may not convert a case under this chapter to a case under chapter 7 or
dismiss a case under this chapter if the court finds and specifically identifies
unusual circumstances establishing that converting or dismissing the case is not
in the best interests of creditors and the estate, and the debtor or any other party
in interest establishes that—
(A)  there is a reasonable likelihood that a plan will be confirmed within the
     timeframes established in sections 1121(e) and 1129(e) of this title, or if such
     sections do not apply, within a reasonable period of time; and
(B)  the grounds for converting or dismissing the case include an act or
     omission of the debtor other than under paragraph (4)(A)—

the Ninth Circuit has recognized conversion or dismissal under § 1112(b) requires "three primary inquiries":

(1)   whether cause exists for granting relief under § 1112(b)(1);

(2)   whether granting relief is in the creditors' and the estate's best interests; and

(3)   if so, which form of relief best serves the creditors' and the estate's interests.

*Baroni*, 36 F.4th at 965.

### 1.   Cause for Relief under § 1112(b)

Section 1112(b)(4) provides a list of circumstances that constitute cause to convert or dismiss. However, "[t]he enumerated causes are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *Pioneer Liquidating Corp. v. United States Tr. (In re Consol. Pioneer Mortg. Entities*), 248 B.R. 368, 375 (9th Cir. BAP 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001)) (quoting H.R. No. 95–595, at 405–06 (1977)). "The bankruptcy court has broad discretion in determining what constitutes 'cause' under section 1112(b)." *Sullivan*, 522 B.R. at 614.

Debtor asserts none of the factors set forth in § 1112(b)(4) apply and no cause otherwise exists for conversion. However, Debtor's arguments on

---

(i)    for which there exists a reasonable justification for the act or omission; and

(ii)   that will be cured within a reasonable period of time fixed by the court.

appeal[19] ignore the basis of the Conversion Order stated on the record—the court deemed Debtor's failure to timely respond to the OSC as Debtor's acquiescence to dismissal or conversion of the case. The OSC expressly provided: "Failure to file a written response may be deemed consent to the dismissal or conversion of the case." The body of the OSC also flagged several separate causes of concern discussed at the Status Conference. The record reflects the OSC Response was not filed timely, and Debtor's counsel admitted the same at the hearing on the OSC. Instead, Debtor focused on the Sale Motion. The record, therefore, supports the bankruptcy court's finding of cause.

## 2. Relief in the Best Interests of Creditors and Estate

After cause for conversion or dismissal is established, the bankruptcy court must then consider whether granting relief is in the best interests of creditors and the estate. The OSC was issued because the bankruptcy court believed, absent some showing by Debtor otherwise, that it was in the estate's interest to convert or dismiss the case. Debtor asserted in its notice of appeal that it was improper to "accommodate one creditor" through conversion to chapter 7, at the expense of Debtor and other creditors. Similarly, Debtor's brief argued Debtor "was denied the provisions of the

---

[19] Debtor argued "[n]one of the United States Trustee guidelines were substantially violated" and it was improper to convert the case before the expiration of the exclusive period allowed under the Bankruptcy Code for Debtor to file a proposed plan of reorganization. Debtor appears to conflate exclusivity with an absolute right to file a plan, which does not exist under the Bankruptcy Code.

safe harbor statutes of Section 1112(b)(2)." However, Debtor also acknowledged that relief is in the best interests of Blizzard, and Blizzard is the only creditor in this SARE case, other than taxing authorities. The bankruptcy court further noted on the record this case appears to be a two-party dispute that might be best resolved outside of bankruptcy. The record, therefore, supports that relief under § 1112(b) was in the best interests of creditors and the estate.

### 3. Conversion or Dismissal

The final inquiry made when granting relief under § 1112(b) is which form of relief best serves the interests of creditors and the estate. The factors typically considered when determining whether dismissal or conversion is in the best interest of creditors have been summarized as follows:

(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal,

(2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted,

(3) whether the debtor would simply file a further case upon dismissal,

(4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors,

(5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise,

19

(6)   whether any remaining issues would be better resolved outside the bankruptcy forum,

(7)   whether the estate consists of a "single asset,"

(8)   whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests,

(9)   whether a plan has been confirmed and whether any property remains in the estate to be administered, and

(10)  whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Efron v. Candelario (In re Efron)*, 529 B.R. 396, 413 (1st Cir. BAP 2015) (quoting *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184, 200-201 (Bankr. D.P.R. 2014)); *see also* 7 Collier on Bankruptcy, at ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2026). Courts have also given significant weight to the preferences expressed by the debtor's creditors. *In re 1121 Pier Vill. LLC*, 635 B.R. 127, 140 (Bankr. E.D. Pa. 2022) (citing *In re Orienta Co-op Ass'n*, 256 B.R. 508, 512 (Bankr. W.D. Okla. 2000)).

The factors considered by the bankruptcy court on the record are consistent with factors 3 through 7 set forth in *Efron*. Blizzard consistently asked that the bankruptcy court exercise its authority to convert the case to chapter 7. In response, Debtor asserted: "[t]he United States Trustee did not join the Motion to convert this case but rather argued it to be dismissed." At the hearing on the OSC, the bankruptcy court questioned the utility of conversion to chapter 7. Debtor insisted there would be nothing for a

chapter 7 trustee to do. Blizzard countered it would be far easier to sell the Property and pay the outstanding taxes and professional fees through a chapter 7 trustee, rather than requiring Blizzard to return to state court to effectuate the sale.[20] The bankruptcy court then noted the likelihood Debtor would simply file another bankruptcy petition if the case was dismissed rather than converted. The bankruptcy court found cause to convert the case to chapter 7.

The record supports conversion, and the bankruptcy court did not abuse its discretion in entering the Conversion Order.

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[20] Blizzard's counsel argued a sale through a chapter 7 trustee would maximize the value of the Property and Blizzard would agree to a carveout to cover the fees and expenses of both the trustee and his/her counsel. Blizzard was also willing to include a carveout for other allowed claims, if any.